Ex. A

≈AO 440 (Rev. 8/01) Summons in a Civil Action

**JUDGE BATTS**

# UNITED STATES DISTRICT COURT

Southern District of New York

Jon Adams

V.

Labaton, Sucharow & Rudoff LLP

SUMMONS IN A CIVIL ACTION

CASE NUMBER: 07 CV 7017

TO: (Name and address of Defendant)

Labaton Sucharow & Rudoff LLP
100 Park Avenue
New York, NY 10017

YOU ARE HEREBY SUMMONED and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Craig Stuart Lanza
Balestriere PLLC
225 Broadway, Suite 2700
New York, NY 10007

an answer to the complaint which is served on you with this summons, within ____20____ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

CLERK

DATE

(By) DEPUTY CLERK

%AO 440 (Rev. 8/01) Summons in a Civil Action

### RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | |
| NAME OF SERVER (PRINT) | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served:

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

  Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☐ Other (specify):

### STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL $0.00 |
|---|---|---|

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____    _____
                     Date                    *Signature of Server*

                            _____
                                  *Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

**JUDGE BATTS**

Craig Stuart Lanza
John Balestriere
BALESTRIERE PLLC
225 Broadway, Suite 2700
New York, NY 10007
Telephone: 212-374-5404
*Attorneys for Plaintiff*



AUG 06 2007
U.S.D.C. S.D. N.Y.
CASHIERS

07 CV 7017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------x

JON ADAMS,

          Plaintiff,

   -against-

LABATON SUCHAROW & RUDOFF LLP,

          Defendant.
-------------------------------------x

__-CV-__

**DIVERSITY COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Jon Adams ("Plaintiff" or "Adams"), by his attorneys Balestriere PLLC, upon personal knowledge as to himself and his own experiences, and upon information and belief as to all other matters, complaining of the Defendant, respectfully alleges as follows:

### PRELIMINARY STATEMENT

1. Plaintiff is forced to bring this lawsuit since Defendant Labaton Sucharow & Radoff LLP ("Defendant" or "the Firm" or "Labaton") has broken its promise to Plaintiff to share the attorneys' fees from cases that Plaintiff has generated. Plaintiff, a former associate at the Firm, was promised 10% of fees on

all business that Plaintiff brought to the Firm. The Firm has paid Plaintiff none of these promised fees, requiring Plaintiff to seek redress from the courts.

2. In July 2004, Defendant hired Plaintiff as an associate with the intent of converting Plaintiff's political connections and networking skills into business for the Firm.

3. Immediately prior to joining the Firm, Plaintiff had been working for the New Mexico Attorney General, and maintained a close relationship with the Attorney General, the leadership of the Attorney General's office, and the lawyers that directly interacted with the New Mexico State pension funds -- the kinds of clients class action attorneys need to represent in large private securities actions.

4. In order to attract Plaintiff to the Firm, Defendant promised Plaintiff 10% of all fees from business that came to the Firm through Plaintiff, consistent with the industry practice.

5. Defendant acquired several cases from New Mexico and elsewhere by way of introductions made through Plaintiff which have and will continue to generate tens of millions of dollars in attorneys' fees for Defendant. However, the Firm reneged on its promise, keeping all the fees generated from Plaintiff's cases.

2

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 exclusive of interest and costs, and Plaintiff and Defendant are citizens of different states.

7. This Court also has personal jurisdiction over Defendant because Defendant resides in this State.

8. Venue is properly laid in the Southern District of New York, under U.S.C. §1391(a), since a substantial part of the events giving rise to the claims occurred in this District.

## PARTIES

9. Plaintiff is a citizen of the United States, and is a resident of the State of New Mexico. Plaintiff has always had political aspirations in the State, and is presently running for Congress in the First District of New Mexico.

10. Defendant is a limited liability partnership having a place of business at 100 Park Avenue, New York, NY 10017.

## FACTS

11. Not long after graduating from Columbia Law School in May 2000, Plaintiff returned to New Mexico as an Assistant Attorney General in his home state. Plaintiff had a long-standing and respected professional relationship with his employer, New Mexico Attorney General Patricia Madrid ("Madrid"). Indeed, Plaintiff even became friends with Madrid's son, Giancarlo Messina.

3

12. In early 2004, Plaintiff considered returning to New York to work in private practice. Plaintiff wanted to work for a firm where his connections to New Mexico's political and government leaders would be appreciated, and where he could use his personal skills to develop business, and be compensated according to a salary and a percentage of business brought in.

13. Plaintiff also knew that many New York class action securities fraud law firms, such as Defendant, often represented the government employee pension funds of states like New Mexico and received that work through the states' Offices of the Attorney General. Recognizing that his connections with the Attorney General's office could be valuable to a New York law firm, Plaintiff sought to capitalize on those connections.

14. In Spring 2004, Plaintiff interviewed with various law firms in New York, including a securities fraud class action firm like Defendant. At each interview, Plaintiff asked the prospective employer what percentage of fees from cases an associate would receive in return for bringing in those cases to the firm.

15. Plaintiff interviewed with lawyers at the Firm in or about March 2004. Chris Keller, a senior associate at the Firm, now a partner, told Plaintiff: "You get ten percent of the business you bring in." This compensation sounded reasonable to Plaintiff, as ten percent represented the standard industry commission for bringing business to a law firm.

16. Defendant initially planned to hire only one associate at the time Plaintiff interviewed. However, when Chris Keller learned of Plaintiff's New

4

Mexico connections, he took Plaintiff to meet with Partner Tom Dubbs ("Dubbs") who was extraordinarily interested in Plaintiff's New Mexico connections. Following the interview, Chris Keller later recounted that he and Dubbs concluded, "We've got to hire this guy."

17. From March 2004 until June 2004, Plaintiff received periodic updates from Defendant, and was told not to accept an offer elsewhere because one should be coming soon from Defendant.

18. Defendant ultimately created an associate attorney position for Plaintiff. Plaintiff accepted the position based on Chris Keller's promise that Plaintiff would receive 10 percent of the business brought to the Firm.

19. On July 26, 2004, Plaintiff began work at the Firm. At that time, Defendant had been on the list of approved law firms for the state of New Mexico.

20. Prior to Plaintiff joining Defendant on July 26, 2004, Defendant had never represented any of the New Mexico pension funds in any capacity. Plaintiff was the only lawyer at the Firm licensed to practice law in the State of New Mexico.

21. Then, in August 2004, Plaintiff attended a function with two of the Firm's Senior Partners, Dubbs and Ira Schochet ("Schochet"). Madrid was scheduled to appear. On the way to the function, Dubbs admonished Plaintiff, "Remember who you work for now," reminding Adams that his loyalties should

5

be with the Firm, not with Madrid, despite the continued good professional relationship that Plaintiff shared with Madrid.

22. When Dubbs, Schochet and Plaintiff arrived at the function, Plaintiff said hello to Madrid, who warmly embraced him.

23. Plaintiff then introduced Dubbs to Madrid. The two had not previously met.

24. After the introduction, the Firm received the available investment portfolios for the New Mexico funds so that the Firm could monitor the portfolios.

25. Within one month of the introduction, Madrid chose the Firm to represent the New Mexico pension funds. Shortly thereafter, New Mexico filed a lawsuit for securities fraud, known as In Re: St. Paul Travelers Securities Fraud Litigation, Master File 04-CV-3801 (JRT-FLN) (D. Minn.) (the "St. Paul Travelers Securities Litigation"). In that matter, the Firm successfully filed a request that New Mexico be appointed lead plaintiff. Madrid selected the Firm to serve as lead counsel.

26. While at the Firm, Plaintiff returned to New Mexico at least three times per year and actively maintained personal and business contacts in government there. He even represented the Democratic Party of New Mexico in the 2004 Presidential election.

27. The Firm was again chosen as lead counsel after New Mexico was appointed co-lead plaintiff in the In Re: HealthSouth Securities Litigation and the

6

Broadcom Securities Litigation ("The HealthSouth Securities Litigation"). The HealthSouth Securities Litigation reached a partial settlement on $445 million in 2006, Master File CV-03-BE-1500-S (N.D. Ala.). In light of the large partial settlement numbers, the Firm is likely due attorney's fees in the tens of millions.

28.   Plaintiff also brought in 8 of the Firm's clients in the Air Cargo anti-trust case ("the Air Cargo case"), currently pending in the Eastern District of New York. As a result of these contacts, the Air Cargo case was consolidated in the Eastern District of New York, and on November 15, 2006, the Firm was appointed co-lead counsel. Thus, Adams brought more than New Mexico contacts to the Firm.

29.   Despite all this, Plaintiff only received a bonus in December 2006, of $20,000.00. By this time, the firm had received $10 million in fees after settling the first part of the St. Paul Travelers Securities Litigation. At this time, Managing Partner Joel Bernstein ("Bernstein") told Plaintiff that he would not receive a percentage of the fees generated by the New Mexico cases, but rather, a standard bonus of $20,000, which was within the range of bonuses received by those associates who had generated no business of any kind for the Firm.

### FIRST CAUSE OF ACTION: BREACH OF CONTRACT

30.   Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 29 of this Complaint as if fully set forth herein.

31. By refusing and failing to pay Plaintiff ten percent of the settlement value of the cases referred to the Firm by the New Mexico Attorney General as well as the Air Cargo Case, Defendant breached its own contract.

32. As a result of Defendant's breach, Plaintiff is entitled to declaratory and compensatory relief.

### SECOND CAUSE OF ACTION: PROMISSORY ESTOPPEL

33. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 32 of this Complaint as if fully set forth herein.

34. Defendant promised Plaintiff ten percent of any fee awards that would follow from Plaintiff bringing business to the Firm. Defendant could reasonably expect that promise to induce Plaintiff to join the Firm.

35. Plaintiff did join the Firm in reliance on Defendant's promise, and injustice can only be avoided by enforcement of the promise. Plaintiff is entitled to declaratory and compensatory relief.

### THIRD CAUSE OF ACTION: UNJUST ENRICHMENT

36. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 35 of this Complaint as if fully set forth herein.

37. Plaintiff conferred a benefit onto the Defendant by making the vital connection between the Firm and the New Mexico Attorney General, resulting in cases worth tens of millions of dollars accruing to Defendant.

38. Defendant intended for Plaintiff to bring in business from New Mexico and the Air Cargo Cases and retained 100% of the benefit provided by

8

Plaintiff. Having promised to pay Plaintiff ten percent of fees generated by the New Mexico cases, Defendant has unjustly enriched itself. To the extent that Defendant owes Plaintiff, Defendant's profits must be disgorged, and Plaintiff is entitled to declaratory and compensatory relief.

### FOURTH CAUSE OF ACTION: FRAUD

39. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 38 of this Complaint as if fully set forth herein.

40. By telling Plaintiff that the Firm would pay him a ten percent commission on any business he was responsible for bringing to the Firm, Defendant made a misrepresentation of a material fact. Defendant intended to deceive Plaintiff, and Plaintiff believed and justifiably relied on Defendant's statement and was induced to work for Defendant in reliance on the promise. As a result of this reliance, Plaintiff has suffered monetary loss, including his share of the fees he would have generated for other securities fraud firms had he become associated with those firms, for which he must be compensated.

41. As a result of Defendant's fraudulent misrepresentation, Plaintiff is entitled to declaratory and compensatory relief, and punitive damages in an amount to be determined at trial.

### FIFTH CAUSE OF ACTION: NEGLIGENT MISREPRESENTATION

42. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 41 of this Complaint as if fully set forth herein.

43. Defendant knew that Plaintiff asked what referral fee he would receive for a serious purpose, and knew that Plaintiff would rely on the statement that the fee would be ten percent. Defendant also knew that if its statement was false, Plaintiff would be injured. Moreover, a special relationship existed between the parties, and the parties were in privity.

44. As a result of Defendant's negligent misrepresentation, Plaintiff is entitled to declaratory and compensatory relief.

### SIXTH CAUSE OF ACTION: QUANTUM MERUIT

45. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 44 of this Complaint as if fully set forth herein.

46. Plaintiff worked for the Firm in good faith with the expectation of earning ten percent on any business he brought to the Firm. Defendant accepted Plaintiff's services, seizing Plaintiff's connections for its exclusive benefit. Plaintiff is entitled to the reasonable value of his services, and to declaratory and compensatory relief.

### SEVENTH CAUSE OF ACTION: CONVERSION

47. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 46 of this Complaint as if fully set forth herein.

48. Having been promised ten percent of any settlement that came out of the business brought in by Plaintiff, Plaintiff has a clear interest in his rightful portion of the settlement that the Firm obtained. By keeping the money in its

own bank account and earning interest on it, Defendant is exercising dominion and control over Plaintiff's property, in derogation of Plaintiff's rights.

49. As a result of Defendants' conversion, Plaintiff is entitled to declaratory and compensatory relief.

11

## PRAYER FOR RELIEF

WHEREFORE, in light of the foregoing, Plaintiff respectfully prays that this Court enter judgment against Defendant as follows:

(a) Granting a declaratory judgment, declaring that Plaintiff is entitled to ten percent of any fees generated by the New Mexico cases;

(b) Awarding Plaintiff damages in the amount of ten percent of monies already paid to Defendant in connection with cases and settlements that came to the Firm as a direct result of Plaintiff's connection to Madrid;

(c) Granting a declaratory judgment, declaring that Plaintiff is entitled to ten percent of any fees generated by the Air Cargo case;

(d) Awarding attorney's fees and costs incurred by Plaintiff in bringing this lawsuit as a result of Defendant's refusal to honor its promise to Plaintiff; and

(e) Granting all other relief as this Court deems just and proper.

Dated: New York, New York
August 3, 2007

By: _____
Craig Stuart Lanza
John Balestriere
**BALESTRIERE PLLC**
225 Broadway, Suite 2700
New York, NY 10007
Telephone: 212-374-5404
*Attorneys for Plaintiff*

12