USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/30/09

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
JON ADAMS,

                  Plaintiff,

        -against-                07 Civ. 7017 (DAB)
                                      MEMORANDUM & ORDER

LABATON, SUCHAROW & RUDOFF LLP,

                  Defendant.
-----------------------------------X
DEBORAH A. BATTS, United States District Judge.

    Plaintiff Jon Adams ("Plaintiff" or "Adams") brings this Complaint containing seven causes of action against Defendant Labaton, Sucharow & Rudoff LLP ("Defendant," or "Labaton," or the "Firm") alleging breach of contract, promissory estoppel, unjust enrichment, fraud, negligent misrepresentation, quantum meruit, and conversion surrounding an alleged oral promise made by a Labaton senior associate to Plaintiff during his interview with the Firm.  Specifically, Plaintiff alleges that the associate told Plaintiff that Plaintiff would receive ten percent of attorney's fees earned by the Firm on all cases that Plaintiff was responsible for bringing to the Firm, that the statement made an oral contract between Plaintiff and Defendant, and that Defendant breached its contract with Plaintiff by refusing to pay Plaintiff the percentage of fees he was promised.

Defendant Labaton moves to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6). Defendant argues that all of Plaintiff's claims fail because Plaintiff has not alleged the facts necessary to establish apparent authority to bind the Firm to the alleged oral promise made by Keller, and therefore, the alleged promise did not create a contract between Plaintiff and Defendant. Defendant contends that Plaintiff's fraud, promissory estoppel, and negligent misrepresentation claims should be dismissed, further, because Plaintiff has not set forth facts supporting the reasonableness of his reliance on the alleged oral promise, as required by those claims. Defendant also argues that Plaintiff's fraud and conversion claims are duplicative of his breach of contract claim, and accordingly must be dismissed.

For the reasons set forth herein, Defendant's Motion to Dismiss the Compliant is GRANTED, and Plaintiff is granted thirty (30) days leave to amend.


## I. BACKGROUND

The following facts alleged in the Complaint in 07 Civ. 7017 (DAB) are assumed to be true for the purposes of this Memorandum and Order.

Soon after graduating from Columbia Law School in May 2000, Plaintiff Jon Adams returned to his home state of New Mexico as

an Assistant Attorney General.  (Compl. ¶ 11)  Plaintiff had a
long-standing and respected professional relationship with his
employer, New Mexico Attorney General Patricia Madrid.  (Id.)

In early 2004, Plaintiff considered returning to New York to
work in private practice for a firm that would appreciate his
connections to New Mexico's political and government leaders, and
where he could use his personal skills to develop business, and
be compensated accordingly.  (Id. ¶ 12)  Plaintiff knew that many
New York class action securities fraud law firms such as
Defendant Labaton represented the government employee pension
funds of states like New Mexico, and received that work through
the states' Offices of the Attorney General.  (Id. ¶ 13)
Recognizing that his connections to the Attorney General of New
Mexico might make him valuable to a New York firm, Plaintiff
began to interview with various law firms in New York in Spring
2004.  (Id. ¶¶ 13-14)  At each interview, Plaintiff asked what
percentage of fees from cases an associate would receive in
return for bringing those cases to the firm.  (Id. ¶ 14)

Plaintiff interviewed with lawyers from Labaton in or about
March 2004.  (Id. ¶ 15)  At the interview, Chris Keller
("Keller"), then a senior associate at the Firm, told Plaintiff,
"You get ten percent of the business you bring in."  (Id.)  Ten
percent compensation sounded reasonable to Plaintiff, as it

3

represented the standard industry commission for bringing business to a law firm.  (Id.)  However Defendant initially planned to hire only one associate at the time Plaintiff interviewed with Defendant, when Keller learned of Plaintiff's New Mexico connections, he took Plaintiff to meet with Partner Tom Dubbs ("Dubbs"), who was particularly interested in these connections.  (Id. ¶ 16)  After the interview, Keller and Dubbs concluded, "We've got to hire this guy."  (Id.)

From March 2004 to June 2004, Plaintiff alleges that he received periodic updates from Defendant that Defendant would be making him an offer soon, and was told by Defendant not to accept an offer elsewhere.  (Id. ¶ 17)  Defendant ultimately created an associate attorney position for Plaintiff.  (Id. ¶ 18)  Plaintiff alleges that he accepted that position based on Keller's representation that Plaintiff would receive ten percent of the business Plaintiff brought to the Firm.  (Id.)

On July 26, 2004, Plaintiff began work at the Firm.  (Id. ¶ 19)  Prior to Plaintiff joining Labaton, Defendant had been on the list of approved law firms for the state of New Mexico, but had never represented any New Mexico pension funds in any capacity.  (Id. ¶ 20)  After joining the Firm, Plaintiff was the only lawyer at the Firm licensed to practice law in New Mexico.  (Id.)

4

In August 2004, Plaintiff attended a function ("Madrid event") with two of Labaton's Senior Partners, Dubbs and Ira Schochet ("Schochet") where New Mexico Attorney General Madrid ("Madrid") was scheduled to appear. (Id. ¶ 21)  On the way to the Madrid event, Dubbs reminded Plaintiff, "Remember who you work for now," indicating that Plaintiff's loyalties were to be with the Firm, and not with his former employer, Madrid. (Id.) When Dubbs, Schochet, and Plaintiff arrived at the event, Madrid warmly embraced Plaintiff, and Plaintiff introduced Dubbs to Madrid. (Id. ¶¶ 22-23)

After the Madrid event, the Firm received the available investment portfolios for the New Mexico funds so that the Firm could monitor the portfolios. (Id. ¶ 24)  Within one month of the Madrid event, Madrid chose Labaton to represent the New Mexico pension funds. (Id. ¶ 25)  Shortly thereafter, New Mexico filed a lawsuit for securities fraud (the "St. Paul Travelers Securities Litigation"), and the Firm successfully filed a request that New Mexico be appointed lead plaintiff. (Id.) Madrid selected the Firm as lead counsel. (Id.)

The Firm was again chosen lead counsel when New Mexico was appointed co-lead plaintiff in another large securities class action lawsuit (the "HealthSouth Securities Litigation"). (Id. ¶ 27)  That litigation reached a partial settlement on $445 million

5

in 2006.  Given that significant partial settlement amount, the
Firm is likely due attorney's fees in the tens of millions.  (Id.)

While at the Firm, Plaintiff returned to New Mexico at least
three times per year, and actively maintained his personal and
professional contacts in government there.  (Id. ¶ 26)  Plaintiff
also brought in business from outside of New Mexico.  (Id. ¶ 28)
Plaintiff also brought in eight of the Firm's clients in a large
anti-trust case (the "Air Cargo case") pending in the Eastern
District of New York.  (Id. ¶ 28)  As a result of these clients,
the case was consolidated, and the Firm was appointed co-lead
counsel.  (Id.)

Despite the business that Plaintiff alleges he is
responsible for bringing to the Firm, and despite the Firm having
received $10 million in fees after settling the first part of the
St. Paul Travelers Securities Litigation, Plaintiff received a
bonus of only $20,000.00 in December 2006.  (Id. ¶ 29)  At this
time, Labaton Managing Partner Joel Bernstein ("Bernstein") told
Plaintiff that he would not receive a percentage of the fees
generated by the New Mexico cases, but rather, a standard bonus
of $20,000.00, which was within the range of bonuses received by
those associates who had generated no business of any kind for
the Firm.  (Id.)

Plaintiff brought this action against Defendant Labaton on

August 6, 2007, alleging breach of contract, promissory estoppel, unjust enrichment, fraud, negligent misrepresentation, quantum meruit, and conversion associated with Defendant's failure to keep its alleged promise to pay Plaintiff ten percent of the fees generated by cases Plaintiff brought to the Firm.  Defendant moved to dismiss this action in its entirety on October 9, 2007.


## II. DISCUSSION

1.  <u>Legal Standard</u>

For a complaint to survive dismissal under Rule 12(b)(6), the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 127 S.Ct. 1955, 1974 (2007).  The plaintiff must satisfy "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." <u>Iqbal v. Hasty</u>, 490 F.3d 143, 157-58 (2d Cir. 2007).  "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, 127 S.Ct. at 1964-65 (internal quotation marks omitted).

In deciding a motion to dismiss, the court "must accept as true all of the factual allegations set out in plaintiff's

complaint, draw inferences from those allegations in the light
most favorable to plaintiff, and construe the complaint
liberally." Roth v. Jennings, 489 F.3d 499, 510 (2d Cir. 2007)
(citation omitted). However, "[c]onclusory allegations or legal
conclusions masquerading as factual conclusions" will not
withstand dismissal. Smith v. Local 819 I.B.T. Pension Plan, 291
F.3d 236, 240 (2d Cir. 2002) (citation omitted; alteration in
original).


2.   Apparent Authority

     In moving for dismissal of the Complaint pursuant to Fed. R.
Civ. P. 12(b)(6), Defendant argues that Plaintiff has failed to
allege facts sufficient to establish Keller's apparent authority
to make and bind the Firm to his alleged oral promise, and as
such, all of Plaintiff's claims against Defendant fail.
Plaintiff maintains that the allegations set forth in the
Complaint are sufficient to create apparent authority, and in any
case, the question of whether Keller had apparent authority to
bind Defendant to his promise is a question of fact that cannot
be resolved at this stage of the proceedings.  Should the Court
find dismissal appropriate, Plaintiff has requested leave to
amend.

"Apparent authority to do an act is created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him." Restatement (Second) of Agency, § 27.  To recover on a theory of apparent authority, a party must establish two elements: "(1) the principal was responsible for the appearance of authority in the agent to conduct the transaction in question, and (2) the third party reasonably relied on the representations of the agent." Herbert Const. Co. v. Continental Ins. Co., 931 F.2d 989, 994 (2d Cir. 1991) (citations omitted).

"Upon failure to properly determine the scope of authority, and in the face of damages resulting from an agent's misrepresentations, 'apparent authority' is not automatically available to the injured third party to bind the principal." Id. at 993.  Rather, "the existence of 'apparent authority' depends upon a factual showing that the third party relied upon the misrepresentations of the agent because of some misleading conduct on the part of the principal—not the agent." Id. (quoting Ford v. Unity Hospital, 32 N.Y.2d 464, 472-73, 346 N.Y.S.2d 238, 244, 299 N.E.2d 659, 664 (1973) (citations omitted) (emphasis added)).  The Second Circuit has rejected the notion

9

that an agent can create apparent authority by his own actions and representations.  Fennell v. TLB Kent Co., 865 F.2d 498, 502 (2d Cir. 1989).  Rather, in order for apparent authority to have been properly created, "the principal must manifest to the third party that he consents to have the act done on his behalf by the person purporting to act for him."  Id. (internal quotations omitted).  Apparent authority requires "'words or conduct of the principal, communicated to a third party,' that give rise to the appearance and belief that the agent possesses authority to enter into a transaction."  Id. at 503 (quoting Hallock v. State, 64 N.Y.2d at 231, 474 N.E.2d at 1181, 485 N.Y.S.2d at 513).

Because the existence of a principal/agent relationship and the creation of apparent authority depend crucially on the words or actions of the principal to state a claim sufficient as a matter of law, Plaintiff Adams must allege some action on the part of the Firm from which Keller's agency may be inferred.  See Ferrostaal, Inc. v. M/V SEA BAISEN, 2004 WL 2734745, *3 (S.D.N.Y. 2004).  Plaintiff contends that by having Keller, a senior associate, conduct the interview with Plaintiff, Defendant created in Keller the appearance of authority.  (Pl.'s Opposition at 6)  Plaintiff maintains that the combination of Keller's statements, interactions with Dubbs, and Dubbs' reaction to

10

Plaintiff's New Mexico connections that, "We've got to hire this guy," leave no doubt that Keller was acting on behalf of Defendant, and that he was invested with sufficient agency to bind the Firm to his alleged promise to Plaintiff. (Id.)  Given the law of this Circuit, and the Court's inability to find in this Complaint any "words or conduct of [the Firm] communicated to [Adams] that give rise to the appearance and belief that [Keller] possess[ed] authority" to speak on behalf of the Firm, Fennell, 865 F.2d at 503, the Court cannot agree with Plaintiff. However "[t]he existence of apparent authority is a question of fact," Herbert, 931 F.2d at 994; Toppel v. Marriott International, Inc., 2006 WL 2466247, *7 (S.D.N.Y. Aug. 24, 2006) (Batts, J.), Plaintiff has not with this Complaint pled any facts suggesting that the Firm made any affirmative action to create the appearance of authority in Keller necessary to bind the Firm to Keller's words and sustain Plaintiff's claims against Defendant as a matter of law.

     Defendant's Motion to Dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) is GRANTED without prejudice, and Plaintiff is granted thirty (30) days leave to replead.  Fed. R. Civ. P. 15(a) (requiring that courts "freely" grant leave to amend "when justice so requires"); see Cohen v. Citibank, 1997 WL 88378, *2 (S.D.N.Y. Feb. 28, 1997) ("[I]t is the usual practice upon

11

granting a motion to dismiss to allow leave to replead.").
Because the Court dismisses the Complaint for failure to state a
claim with sufficient detail, it would not be futile to grant
Plaintiff leave to amend.  See American Broadcasting Companies,
Inc. v. Flying J, Inc., 2007 WL 583176, *11 (S.D.N.Y. Feb 22,
2007) (Batts, J.) ("Absent a showing of undue delay, bad faith or
dilatory motive on the part of the movant, undue prejudice to the
opposing party, or the futility of the amendment, a plaintiff
should be granted leave to replead.").  On repleading, it is
incumbent on Plaintiff to provide enough detail about the alleged
representations Defendant made to Plaintiff that created apparent
authority in Keller to bind the Firm in contract to Keller's
alleged promise.  The Court notes that the allegations Plaintiff
has suggested he may add if given the opportunity to amend (Pl.'s
Opposition at 8) are not sufficient to sustain this burden.

On repleading, Plaintiff must also do more to support a
finding that his reliance on any representations made by
Defendant and its alleged agent was reasonable, as required by
the doctrine of apparent authority and Plaintiff's claims of
fraud, promissory estoppel, and negligent misrepresentation.[1]

_____

[1] Reasonable reliance is a prerequisite to all of these
claims.  To prove fraud, "a plaintiff must show that (1) the
defendant made a material false representation, (2) the defendant
intended to defraud the plaintiff thereby, (3) the plaintiff
reasonably relied upon the representation, and (4) the plaintiff

Defendant is correct that Fed. R. Civ. P. 9(b) governs pleadings on fraud and mistake, and that Plaintiff has not pled reasonable reliance with sufficient particularity with this Complaint.  Rule 9(b) "requires that '[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity,' an exception to the generally liberal scope of pleadings allowed by Rule 8."  <u>Luce v. Edelstein</u>, 802 F.2d 49, 54 (2d Cir. 1986) (citing <u>Ross v. A.H. Robins Co.</u>, 607 F.2d 545, 557 (2d Cir. 1979), <u>cert. denied</u>, 446 U.S. 946 (1980)).  In accordance with the requirements of Rule 9(b), Plaintiff must allege with particularity that he reasonably relied on Defendant's alleged misrepresentations.  Although the Complaint alleges that Plaintiff abstained from accepting other positions and accepted and sustained his employment with Defendant in

---

suffered damage as a result of such reliance."  <u>Banque Arabe et Internazionale D'Investissement v. Maryland Nat'l Bank</u>, 57 F.3d 146, 153 (2d Cir. 1995).  To recover under promissory estoppel, Plaintiff must establish: (1) a clear and unambiguous promise; (2) reasonable and foreseeable reliance by the party to whom the promise is made; and (3) harm to the party asserting estoppel by reason of reliance.  <u>Stillman v. Townsend</u>, 2006 WL 2067035, *6 (S.D.N.Y. Jul 26, 2006).  For negligent misrepresentation, Plaintiff must demonstrate, "(1) carelessness in imparting words; (2) upon which others were expected to rely; (3) upon which they did justifiably rely; (4) to their detriment; and (5) the author must express the words directly, with knowledge they will be acted upon, to one whom the author is bound by some relation of duty of care."  <u>DVCi Techs., Inc. V. Timessquaremedia.com, Inc.</u>, 2000 U.S. Dist. LEXIS 376000, *6 (S.D.N.Y. June 7, 2006) (internal citation omitted).

13

reliance on Defendant's alleged representation, without more
specific allegations as to why this reliance was reasonable, it
is difficult for the Court to conclude that this element has been
adequately pled.  See Bezuszka v. L.A. Models, Inc., 2006 WL
770526, *12 (S.D.N.Y. Mar. 24, 2006).  It strains credibility
that Plaintiff, a lawyer himself, was employed with Defendant for
over two years before bringing this action in continued,
reasonable reliance on Defendant's initial alleged promise when
he had not been paid the ten percent he was allegedly due, or
provided with any other guarantee that he would be.  See id. ("If
[Plaintiffs] had indeed not been paid during the entirety of the
two-year contract terms, it strains credulity that they could
continue to reasonably rely on the defendants' representations. .
. .").

     The Court cannot at this stage dismiss any of Plaintiff's
additional claims as duplicative of his breach of contract claim
because the Court cannot determine on these pleadings whether a
contract existed between Plaintiff and Defendant, and whether
Plaintiff has a viable breach of contract claim sufficient to
survive dismissal.  Should Plaintiff properly state a claim for
breach of contract against Defendant upon repleading, however, it
appears to the Court that all of Plaintiff's remaining causes of
action would be eliminated as a matter of law as duplicative or

14

otherwise barred.  With respect to fraud, Plaintiff has alleged

no facts suggesting that his fraud claim is anything but

duplicative of his breach of contract claim, and therefore

unsustainable as a matter of black letter New York law.  See

Bridgestone/Firestone v. Recovery Credit Servs., 98 F.3d 13, 20

(2d Cir. 1996) ("To maintain a claim of fraud, a plaintiff must

either: (i) demonstrate a legal duty separate from the duty to

perform under the contract; (ii) demonstrate a fraudulent

misrepresentation collateral or extraneous to the contract; or

(iii) seek special damages that are caused by the

misrepresentation and unrecoverable as contract damages.").

Despite Plaintiff's efforts with the fourth cause of action in

his current Complaint, "a contract claim cannot be converted into

a fraud claim by the addition of an allegation that the promisor

intended not to perform when he made the promise."  Papa's June

Music v. McLean, 921 F. Supp. 1154, 1161 (S.D.N.Y. 1996).

Because the only fraud alleged arises out of the same facts that

serve as the basis for the breach of contract claim, Plaintiff's

fraud claim fails to state a claim for fraud on which relief can

be granted alongside relief on breach of contract.  Id. at 1162.

The same problem of duplicative claims bars Plaintiff from

tethering negligent misrepresentation and conversion claims to

his breach of contract action.  "When the alleged

15

misrepresentation [underlying a negligent misrepresentation claim] is a promise and not a statement of fact, a special relationship must exist between the parties in order for a promissory misrepresentation to give rise to a justiciable claim." <u>Cannon v. Douglas Elliman, LLC</u>, 2007 WL 4358456, *10 (S.D.N.Y. Dec. 10, 2007) (internal quotations and citation omitted).  On the facts of this case as presented by Plaintiff, there is no special, extra-contractual relationship between Plaintiff and Defendant to give rise to a separate, justiciable claim to negligent misrepresentation.  Likewise, "an action for conversion cannot be validly maintained where damages are merely being sought for breach of contract." <u>Moses v Martin</u>, 360 F. Supp. 2d 533, 541 (S.D.N.Y. 2004) (citation omitted).  To sustain a conversion claim alongside a breach of contract claim, "a plaintiff must show acts that were unlawful or wrongful as opposed to mere violations of contractual rights." <u>Id.</u>

Plaintiff's remaining claims of promissory estoppel, unjust enrichment, and quantum meruit cannot be maintained alongside a properly asserted breach of contract claim as a matter of law. "The existence of a valid contract will generally preclude quasi-contract claims," <u>Stillman v. Townsend</u>, 2006 WL 2067035, *6 (S.D.N.Y. Jul. 26, 2006).  As such, these claims may only proceed should the Court find that no valid contract exists. <u>See also</u>

16

R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 60 (2d Cir. 1997)
("[claims for unjust enrichment or quantum meruit] are non-
contractual, equitable remedies that are inapplicable if there is
an enforceable contract governing the subject matter");
International CableTel Inc. v. Le Groupe Videotron Ltee, 978
F.Supp. 483, 487 (S.D.N.Y. Sep. 19, 1997) ("A valid contract
governing a particular matter precludes a recovery in quasi-
contract for events arising out of the same subject matter.");
Violette v. Armonk Assocs., L.P., 872 F.Supp. 1279, 1282
(S.D.N.Y. 1995) ("A quasi contract only applies in the absence of
an express agreement . . ."). "If it has not yet been determined
whether there is a valid contract between the parties then
recovery under quasi-contract theories may be proper and thus
dismissal is not appropriate." Indep. Energy Corp. v. Trigen
Energy Corp., 944 F.Supp. 1184, 1200 (S.D.N.Y. 1996) (citation
omitted).  Because the Court cannot on these pleadings render a
determination as to the existence of a contract between Parties,
the Court makes no ruling at this point on the viability of these
claims.

17

III. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss the Complaint is GRANTED and Plaintiff is granted thirty (30) days leave to replead all counts of his Complaint.

SO ORDERED.

Dated:    New York, New York

          March 30, 2009

                              _Deborah A. Batts_

                              Deborah A. Batts

                         United States District Judge